IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Robert Clayton, #286814, | ) | Civil Action No.: 2:10-cv-00190-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| John Ozmint; Anthony Padula, | ) | |
| Margaret Bell, and J.J. Brooks, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court after the Court granted the Plaintiff's Motion for Reconsideration and vacated, in part, summary judgment in favor of the Defendants. [Docket # 71]. Specifically, out of an abundance of caution, the Court vacated summary judgment on the Plaintiff's claim of cruel and unusual punishment due to the restricted diet he received in punitive segregation and his claim of unlawful taking of his gift money for medical fees and DNA testing because he claimed that he did not have an adequate opportunity to demonstrate a genuine issue of material fact. Despite the fact that the Plaintiff briefed these issues in his Motion for Reconsideration and the Court found his arguments to be without merit, the Court granted the Plaintiff an additional thirty-four (34) days to present all of his evidence as to these claims. Subsequently, the Plaintiff has filed two separate documents with attachments: (1) a response objecting to summary judgment being granted in favor of the Defendants on Plaintiff's claim of cruel and unusual punishment due to the restricted diet [Docket # 75]; and (2) a response objecting to summary judgment being granted in favor of the Defendants on Plaintiff's claim of unlawful taking of his gift money [Docket # 76]. This matter is ripe for review.

*Legal Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp.,* 477 U.S. at 322.

*Discussion*

In the Plaintiff's response dealing with his 42 U.S.C. § 1983 claim alleging cruel and unusual punishment due to the restricted diet he received in punitive segregation, the Plaintiff merely repeats the same arguments that he made in his Motion for Reconsider, which the Court found to be without merit. Specifically, the Plaintiff claims that he was served a "bread diet that do[es] not meet the 2700 calorie daily intake for 29 months." [Docket # 75], p. 3. Further, the Plaintiff claims that the Defendants deviated from the normal restricted diet and replaced sliced bread with "cold rolls," which have caused him to suffer "rectum bleeding, constipation, and anal soreness." *See id.* at 5; *see also* [Docket # 75-1], p. 3 ("Slice bread is the original diet for emergency lock down situations only.")

Prison officials have the discretion to control the diet's contents as long as it is nutritionally adequate. *Divers v. Dep't of Corrs.,* 921 F.2d 191, 196 (8th Cir. 1990); *see Madyun v. Thompson,* 657 F.2d 868, 874-75 (7th Cir. 1981) (allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); *Hoitt v. Vitek,* 497 F.2d 598, 601 (1st Cir. 1974) (prisoner's allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given that three meals were provided daily); *see also Boatwright v. Padula,* No. 3:09-2545, 2010 WL 1945718 (D.S.C. Apr. 13, 2010) (prisoner's allegation that the biscuits he was served caused him to have hemorrhoids did not constitute cruel and unusual punishment).

In his attached affidavit, the Plaintiff admits that he

> was served as a regular diet 4 cold rolls or biscuits, 3 thin slices of lunch meat, 1/4 of a carrot, sometimes cheese, .75 bowl of cereal or replace[d] with two eggs.

[Docket # 75-1], p. 1.  This contradicts his insinuation that he was served only biscuits and, thus, the restricted "bread diet" was inadequate.  To the extent that the biscuits did not agree with his digestive system, the Defendants did not force the Plaintiff to eat the biscuits and, in fact, the Plaintiff stopped eating them at some point: "I'm eating only the eggs, cheese, meat, and the dinner tray." [Docket # 19-1], p. 1.  Moreover, the Plaintiff clearly admits in his Complaint that the Defendants prescribed him "natural vegetable powder" containing fiber to aid his body in digesting food and "some pills to help soften the feces and prevent rectum bleeding." Compl., p. 5.  As such, the Plaintiff's cruel and unusual punishment via restricted diet claim fails on the merits because he has failed to come forward with any evidence that the Defendants acted with deliberate indifference or knowingly and unreasonably disregarded a substantial risk of serious harm to him by the enforcement of the restricted diet. *See Farmer v. Brennan,* 511 U.S. 825, 845-46 (1994); *Wilson v. Seiter,* 501 U.S. 294, 302-03 (1991).

In the Plaintiff's response concerning his claim that the Defendants unlawfully took his gift money to pay for medical fees and DNA testing, he makes three arguments.  First, the Plaintiff claims that the Defendants' supplemental memorandum in support of summary judgment was untimely because it was not filed within the 10 day extension of time to file and serve dispositive motions, which was granted by the Magistrate Judge.  However, the record reflects that the Defendants' Motion for Summary Judgment, in which they asked the Court to "dismiss with prejudice the Plaintiff's action in its entirety," was, in fact, filed within the extension granted by the Magistrate Judge.  The supplemental memorandum, which was filed one month later, merely provided arguments and authority as to why the Court should grant summary judgment in favor of the Defendants as to the Plaintiff's claim alleging the unlawful taking of his gift money to pay fees

for medical treatment and DNA testing. *See generally In re Parker,* 826 F.2d 1060 (4th Cir. 1987) ("[T]he district court has considerable discretion in managing its civil docket in the best interests of judicial economy and fairness to the parties, including the discretion to set and enlarge time limitations."); *cf. Enlow v. Tishomingo Cnty., Miss.,* 962 F.2d 501, 506 (5th Cir. 1992) (finding the district court may permit a second motion for summary judgment, especially where the factual record has expanded as a result of an amended pleading). Moreover, the Plaintiff has had ample opportunity to respond to the arguments contained in the supplemental memorandum and has done so. Thus, the Plaintiff's first argument fails.

Next, the Plaintiff argues that "the medical co[-]payment policy is unauthorized by South Carolina statute providing deductions from a municipality or county for elective medical treatment." [Docket # 76], p. 2; *see* S.C. Code Ann. § 24-13-80 (2010). According to the Plaintiff, "[t]he Due Process clause contains a substantive component that bars certain, arbitrary wrongful government actions regardless of the fairness of the procedures used to implement them." *See id.* at 3 (internal citation omitted). In further support of his argument, the Plaintiff cites an unpublished case, *Burks v. Pate,* 119 Fed. Appx. 447 (4th Cir. 2005), in which the court held:

> The South Carolina Code provides that prison authorities may deduct from a prisoner's inmate trust account the costs of "medical treatment for injuries inflicted by the inmate upon himself or others." S.C. Code Ann. § 24-13-80 (2000). This statute does *not* authorize deduction for costs associated with treating injuries *to* the inmate by other inmates."

*Id.* at 451. However, *Burks* is distinguishable from the instant matter because the Plaintiff was not injured by other inmates. Instead, the record reflects that he was charged a series of medical co-pays in the amount of $2.00 and at least one RX co-pay in the amount of $2.00 for medical services he either desired or required, and he does not question that services were provided. *See* [Docket # 76-1],

5

pp. 3-4.[1] *See, e.g., Cabbagestalk v. Richstad,* No. 09-1834, 2009 WL 4040479 (D.S.C. Nov. 19, 2009) ("Prisons and jails are allowed to impose co-payments for medical services *if they actually provide medical care to prisoner.*" (citing *Stanley v. Ohio Dept. Of Rehabilitation and Correction,* No. C2-02-178, 2002 U.S. Dist. LEXIS 21996 (S.D. Ohio Aug. 13, 2002))); *Sturkey v. Ozmint,* No. 07-1502, 2009 WL 649569 at * 2 (D.S.C. Mar. 11, 2009) ("[D]ebits such as those made for filing fees, medical services, and expenses are not 'deprivations' because the inmate has been provided with a service or good in exchange for the money debited."); *Sims v. Lexington Cnty. Det. Ctr.,* No. 06-3490, 2008 WL 216345 at * 7 (D.S.C. Jan. 24, 2008) ("[J]ails are allowed to impose co-payments for medical services.").[2] Thus, this claim fails on the merits.

Finally, the Plaintiff argues that "[t]he unauthorize[d] taking of DNA processing fee payment from inmate non[-]wage or gift money is unlawful." [Docket # 76], p. 4. The Plaintiff claims that the Defendants have violated his due process rights by deducting money from his trust account to pay for DNA processing fees. Specifically, the Plaintiff argues that South Carolina Code § 23-3-670 does not authorize the Defendants to deduct these fees from his "non-wage" account: "[P]laintiff

---

[1] These co-pays also appear to be authorized under state law pursuant to § 24-13-80(B)(2).

[2] *Cf. Johnson v. Dept. of Pub. Safety and Corr. Servs.*, 885 F. Supp. 817, 821 (D. Md. 1995) (inmates are not entitled to free medical care, and an inmate's displeasure at having to pay a medical co-payment does not present a constitutional claim; due process is not violated when deductions are made from an inmate's account "quite simply because they have purchased something on their own initiative."); *Reynolds v. Wagner,* 128 F.3d 166, 173-74 (3d Cir. 1997) (deliberate indifference standard does not guarantee prisoners to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society); *Bailey v. Carter,* 15 Fed. Appx. 245 (6th Cir. 2001) (requiring an inmate to make a $3.00 co-pay for medical treatment does not violate the Eighth or Fourteenth amendments); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985) (prisoner had alleged no facts sufficient to support allegation that $3.00 fee for medical visits represented deliberate indifference).

6

should have the liberty to decide [whether] he wants to pay this DNA fee out of nonwages since he cannot earn wages." *Id.* However, the provision challenged by the Plaintiff concerning DNA testing and charging is constitutional. *See In re DNA Ex Post Facto Issues,* 561 F.3d 294 (4th Cir. 2009). The fact that § 23-3-670(A)(1) provides that the fee "may be garnished from wages" earned by the inmate while incarcerated does not restrict the Department of Corrections from recovering the fee from non-wages voluntarily deposited in the inmate's trust account subsequent to notice of the deduction procedure. *Sanders v. S.C. Dep't of Corr.,* 379 S.C. 411, 418-19 (Ct. App. 2008). Thus, this claim fails on the merits, as there exists no genuine issue of material fact.[3]

*Conclusion*

Having thoroughly reviewed the entire record, the Plaintiff's responses, and the applicable law, the Court finds that summary judgment is appropriate in favor of the Defendants. Based on the foregoing, it is **ORDERED** that summary judgment is granted in favor of the Defendants on the Plaintiff's claim of cruel and unusual punishment due to the restricted diet he received in punitive segregation and his claim of unlawful taking of his gift money for medical fees and DNA testing. The Defendants' Motion for Summary Judgment [Docket #41] is **GRANTED**, and the Plaintiff's Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
February 1, 2011

---

[3] The Plaintiff does not allege and there is no evidence to support a finding that the Defendants did not provide the Plaintiff with notice of the deduction procedure.